MELVIN H. BAER AND LUCILE C. BAER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Baer v. Commissioner
Docket No. 987-73.
United States Tax Court
T.C. Memo 1975-114; 1975 Tax Ct. Memo LEXIS 257; 34 T.C.M. (CCH) 565; T.C.M. (RIA) 750114; April 28, 1975, Filed. *257 James F. Thornburg and Nelson J. Vogel, Jr., for the petitioners. Thomas J. Meyer, for the respondent. TIETJENS
MEMORANDUM OPINION TIETJENS, Judge: The Commissioner determined deficiencies of $2,741 and $1,522 in petitioners' Federal income taxes for the years 1969 and 1970, respectively. Concessions have been made, and the only question remaining for decision is whether certain income received by petitioners represented long-term capital gain from the sale of a lease. This case was fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure. The facts which we deem necessary for decision will be referred to below. Petitioners, Melvin H. Baer (hereafter Melvin), and Lucile C. Baer (hereafter Lucile) resided in Hallandale, Florida, on the date they filed their petition herein. During the years 1969 and 1970 petitioners resided together as husband and wife in South Bend, Indiana. Petitioners timely filed joint Federal income tax returns for 1969 and 1970 with the district director of internal revenue for the district of Indiana at Indianapolis, Indiana. During 1969 and 1970, Melvin owned 32.56% in value of the outstanding *258 stock of Baer's Home Outfitters, Inc. (hereafter Home), and Lucile owned 32.55% in value of the outstanding stock of Home. The remaining shares of Home were owned by other members of the Baer family. On August 13, 1945, Harry W. Schafer (hereafter Schafer) and Eugene B. Warner (hereafter Warner), as lessors unrelated to petitioners, leased to petitioners improved real property located on South Michigan Street in South Bend. The lease was to extend "for a term of ten years and two months commencing on the first day of November, 1945 and terminating on the thirty-first day of December, 1955." The signatures on that lease were acknowledged before a notary public on August 30, 1945, and that date is referred to in subsequent documents as the date of the original lease. On October 22, 1945, petitioners made a partial assignment of their leasehold interest to Home. The partial assignment of the lease was "for the term commencing November 1, 1945 and expiring July 1, 1947." On July 1, 1947, petitioners entered into an agreement with Home whereby petitioners assigned all of their "right, title and interest" in the 1945 lease. On March 4, 1947, Warner and Schafer stated in a letter that, *259 on November 21, 1946, they had agreed to extend the term of the 1945 lease until December 31, 1955. By letter dated December 31, 1947, Schafer and First Bank and Trust Company of South Bend (hereafter trustee), as executor and trustee of Warner's estate, "[granted] to * * * [petitioners] an irrevocable right and privilege to renew and extend" the 1945 lease "for a term of ten years beginning January 1, 1956 and expiring at midnight December 31, 1965." On July 10, 1950, Schafer and trustee entered into a "Lease" with petitioners whereby Schafer and trustee "[leased]" the South Michigan Street property "for a period of ten (10) years and one (1) month, beginning on the first day of January, 1956 and concluding at midnight on the 31st day of January, 1966." This 1950 lease incorporated the same terms and conditions set forth in the 1945 lease. The 1950 lease was amended in 1951 to add to the premises leased and the rent, but the amendments did not affect the period of the lease. Similarly, an amendment in 1958 altered the rent but did not alter the period of the lease. Petitioners were required to be parties to the 1950 and 1951 documents since Schafer and trustee refused to relieve *260 them of liability under the lease. On January 2, 1956, petitioners assigned and sold "all of the right, title and interest" which petitioners held under the 1950 lease to Home. By warranty deeds dated September 1, 1960, and September 7, 1960, Schafer and trustee conveyed the South Michigan Street property to Baer's Home Outfitters, Inc., Goshen, Indiana (hereafter Goshen). On July 15, 1960, Goshen, petitioners, and Home entered into an agreement, which provided, in part, as follows: ADDITIONAL AMENDMENT OF LEASE DATED AUGUST 30, 1945 AND FOURTH AMENDMENT OF ORIGINAL LEASE DATED JULY 10, 1950 THIS AGREEMENT made and entered into at South Bend, Indiana, effective the 15th day of July, 1960, by and between BAER'S HOME OUTFITTERS, INC., GOSHEN, IND., an Indiana corporation with principal offices located at Goshen, Indiana, hereinafter designated as "Lessor", and MELVIN H. BAER and LUCILE C. BAER and BAER'S HOME OUTFITTERS, INC., an Indiana corporation with principal offices located at South Bend, Indiana, hereinafter designated as "Baers" and "Lessee" respectively, WITNESSETH: WHEREAS on the effective date hereof Lessor has entered into a contract for the purchase of real estate *261 known as Lot Numbered 297 as shown on the Original Plat of the Town, now City of South Bend, St. Joseph County, Indiana, and is the assignee of leases upon said premises, as amended, in favor of Baer's Home Outfitters, Inc.; and WHEREAS Baers have at all times remained liable under said leases, even though assigned to Baer's Home Outfitters, Inc.; and WHEREAS the parties desire further to amend said leases covering said premises on the terms and conditions hereinafter stated; NOW, THEREFORE, the parties, each in consideration of the promises of the others hereinafter contained, do hereby agree as follows: 1. The existing leases, as amended, covering said above described premises more commonly known as 315-317-319 South Michigan Street, South Bend, Indiana, be and the same hereby are further amended to provide: For value received, Lessor does hereby grant to Lessee: (i) An irrevocable right and option to extend said leases for a term of years beginning on the expiration of the existing several leases and expiring at midnight on January 31, 1976, upon the same terms and conditions as are contained in said existing leases, as amended, as though said existing leases, as amended, *262 were for a term initially terminating January 31, 1976. (ii) Assuming the exercise by Lessee of the option set forth at subparagraph (i) above and the performance by Lessee of the obligations incumbent upon it thereunder, an irrevocable right and option to extend said leases for a term of years beginning at midnight on January 31, 1976, and expiring at midnight on January 31, 1986, upon the same terms and conditions as are contained in said existing leases, as amended, as though said existing leases, as amended, were for a term initially terminating January 31, 1986. (iii) Assuming the exercise by Lessee of the option set forth at subparagraph (ii) above and the performance by Lessee of the obligations incumbent upon it thereunder, an irrevocable right and option to extend said leases for a term of years beginning at midnight on January 31, 1986 and expiring at midnight on January 31, 1996, upon the same terms and conditions as are contained in said existing leases, as amended, as though said existing leases, as amended, were for a term initially terminating January 31, 1996. 2. Should Lessee elect to exercise said (options) respectively, Lessee shall serve written notice on *263 Lessor prior to the expiration of the term of said leases as extended to such effect and, if not so extended, said leases shall end. Said notice shall be effective upon mailing. 3. Lessor, as in the case of its predecessors, has refused the request of Melvin H. Baer and Lucile C. Baer to be released from liability under said leases as amended, and accordingly is requiring herein that said named persons be fully responsible and liable for the provisions of said original leases, as amended and extended as the case may be. Accordingly, Baers so agree to be responsible with said Lessee. On July 15, 1960, the first option, for the period ending January 31, 1976, was exercised by a document which was signed by Home and petitioners. That document contains the following relevant provisions: Pursuant to the additional amendment of lease dated August 30, 1945 and fourth amendment of original lease dated July 10, 1950, executed as of this date the undersigned do hereby elect to exercise the option to extend said leases for a term of years beginning on the expiration of the existing several leases and expiring at midnight on January 31, 1976, upon the same terms and conditions as are contained *264 in said existing leases, as amended, and as though said existing leases, as amended, were for a term initially terminating January 31, 1976. In accord with your requirement, the undersigned Melvin H. Baer and Lucile C. Baer execute this election to exercise said option individually to indicate their compliance with paragraph 3 of said instrument of additional amendment, along with said lessee. In 1969 and 1970, petitioners received $9,965 and $9,044, respectively, from Home. Petitioners reported the receipt of these amounts on their Federal income tax returns as capital gains from the installment sale of a capital asset. The Commissioner determined that those amounts were dividends rather than capital gain. Petitioners argue that the income they received from Home in 1969 and 1970 was derived from the sale of a leasehold interest and, accordingly, subject to capital gain treatment. The Commissioner argues that, in 1969 and 1970, petitioners had no leasehold interest to assign and that any payments to petitioners were either dividends or income resulting from petitioners' services as sureties and taxable as ordinary income. Both parties interpret the documents involved herein *265 to require payments by Home to petitioners for the assignment only so long as petitioners remained assignors under the agreements. In other words, both parties assume that, if petitioners had no leasehold after January 31, 1966, they had nothing to assign and could not receive payments for an assignment. Since we believe that interpretation is reasonable, we must decide whether, after January 1966, petitioners were assignors of a leasehold interest. We conclude that, under the 1960 agreement, Home received a leasehold interest and petitioners did not. That agreement treated Home as lessee, for Home was designated "lessee," the options were "[granted]" to it, and it was expected to exercise them. Petitioners were granted nothing, but were merely held "fully responsible and liable for the provisions of" the lease. Petitioners signed the exercise of the option "to indicate their compliance" with the requirement of their liability. Furthermore, whereas, in 1945 (and 1947) and 1956, petitioners had entered into agreements of assignment reflecting the original and renewed leasehold interests, they apparently never executed such an agreement in 1966. The documents convince us that petitioners *266 were not assignors in 1966. Neither Kornblum v. Henry Mangels Co.,167 So. 2d 16 (3d Dist. Ct. App. Fla. 1964), nor Schine-Oswego Corporation v. Trovato,191 Misc. 556, 76 N.Y.S. 2d 639 (1948) (both cited by petitioners) requires a different interpretation. In Kornblum, the option was granted to the assignor as part of the original lease rather than to the assignee. Although the exact provisions of the lease extension in Schine-Oswego are not clear, we note that the court therein was concerned with liability expressly established by the instrument and was not concerned with which party held or had held the leasehold. We find no great significance in the fact that the 1960 document is entitled "Amendment to Lease." We believe that, although the lease may relate back to earlier documents, petitioners were not granted the leasehold interest and they had nothing to assign. Accordingly, payments received by petitioners in 1969 and 1970 cannot represent payments for the assignment of a lease and may not be treated as capital gains. Decision will be entered for the respondent.